# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA WONG,<br><br>                      Plaintiff,<br>vs.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>                     Defendant. | CASE NO. 12cv2917-L (MDD)<br><br>ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE<br><br>[ECF NO. 38] |

Before the Court is a joint motion to determine a discovery dispute filed November 19, 2013. (ECF No. 38). At issue are four (4) interrogatories and two (2) requests for production of documents propounded by Plaintiff upon Defendant. In this case, Plaintiff challenges the denial of long-term disability benefits from Defendant under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The parties have agreed that the abuse of discretion standard applies to the Court's review of Defendant's decision denying benefits. (*See* ECF No. 24).

## Background

According to her Complaint, Plaintiff was employed by The Hobart West Group, Inc., as its Western Regional Facilities Manager.

Defendant Aetna Life Insurance Company issued a Long Term Disability Group Policy to The Hobart West Group, Inc. Plaintiff applied for benefits and her application was finally denied on September 22, 2011. (ECF No. 1).

## Legal Standard

Normally, no discovery is allowed in an action in federal court seeking review of a denial of benefits under an ERISA plan. An exception exists, however, where a plaintiff alleges a "structural conflict of interest." A structural conflict of interest occurs when an insurer acts as both the plan administrator and the funding source of benefits.

> On the one hand, such an administrator is responsible for administering the plan so that those who deserve benefits receive them. On the other hand, such an administrator has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers.

*Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 965–66 (9th Cir. 2006). A reviewing court using the abuse of discretion standard must evaluate the nature, extent, and effect of the conflict in deciding how skeptically to view the conflicted administrator's decision. *Id.* at 968–69. "[W]hen reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, we must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference we accord the administrator's decision." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008). In evaluating how the conflict affects the level of judicial scrutiny, a court may consider evidence outside the administrative record. *Abatie*, 458 F.3d at 970. Among the factors to be considered are: evidence of malice, self-dealing, or parsimonious claims-granting history; the giving of inconsistent reasons for denial of a claim; failure to adequately investigate a claim; and repeated denials to

deserving participants by interpreting plan terms incorrectly. *Id.* at 967–68; *see also Bardill v. Lincoln National Life Ins.*, 2011 WL 891141 (N.D.Cal. March 15, 2011) (examining evidence of malice or self dealing, consistency of reasons for denial and thoroughness of investigation). A conflict cannot be shown by showing the decision to deny benefits was wrong. *Harper v. Unum Life Ins. Co. Of America*, 2007 WL 1792004 (E.D.Cal. June 19, 2007). Moreover, after a court has assessed the effect of the conflict on the amount of discretion afforded, it may not use any evidence outside the administrative record when deciding if the decision to deny benefits was an abuse of discretion. *Abatie*, 458 F.3d at 970. Accordingly, discovery into how and why the decision was made is not allowed except when such evidence is being sought to show the existence of a conflict. *See Harper*, 2007 WL 1792004 at *5; *Sheakalee v. Fortis Benefits Ins. Co.*, 2008 WL 4279383 at *5 (E.D.Cal. Sept.16, 2008).

Plaintiffs must be able to obtain information through discovery relating to the extent and nature of the conflict. *Groom v. Standard Ins. Co.*, 492 F.Supp.2d 1202, 1205–06 (C.D.Cal. 2007) ("relevant inquiries might include inquiries designed to obtain 'evidence of malice, of self-dealing, or of a parsimonious claims-granting history' ") (*quoting Abatie* 458 F.3d at 968); *see also Leu v. Cox Long–Term Disability Plan*, 2009 WL 2219288 at *4 (D.Ariz. July 24, 2009) (allowing discovery into "incentivized parsimonious claim management."); *Sheakalee v. Fortis Benefits Ins. Co.*, 2008 WL at *3 (E.D.Cal. Sept. 16, 2008). Discovery, however, cannot be unlimited and plaintiffs have no right to engage in extensive fishing expeditions. *Leu*, 2009 WL 2219288 at *3.

## Discussion

Plaintiff claims that the requested discovery relates to the nature and extent of Defendant's financial conflict of interest. Specifically,

Plaintiff believes that evidence regarding the date of the termination of the Group Policy covering Plaintiff and statistical evidence regarding the number of persons receiving benefits under that policy post-termination is relevant.  Plaintiff's theory of relevance is that the termination of the policy exacerbated Defendant's financial conflict because Defendant no longer was receiving premium payments from Plaintiff's former employer.  Evidence of the number of persons continuing to receive benefits or granted benefits post-termination would tend to show the extent of the conflict, suggests Plaintiff.  Defendant objects to the requests as irrelevant, asserts that Plaintiff is fishing and challenges Plaintiff's conflict theory as merely speculative.   Plaintiff also seeks evidence of Defendant's policies and practices regarding the impact of disability decisions of the Social Security Administration on claims administration.

    1.  *Interrogatory No. 4*

Plaintiff asks for the date of the termination of the applicable Group Policy.  On the one hand, this evidence may assist the Court in deciding how skeptically to view the conflicted administrator's decision. *Abatie,* 458 F.3d at 968-69.   However, an inference that Defendant was motivated more strongly to deny claims post-termination may not be justified.  Once it stopped receiving premiums, Defendant may or may not have been or gone "underwater" in providing benefits under this Policy -- Defendant's investments of the premiums may have provided sufficient returns or reserves to cover the benefits paid.  The answer to the Interrogatory ultimately may have no place in the final analysis. The Court finds its relevance to be marginal but will order Defendant to provide the answer.  Providing this evidence to Plaintiff will allow Plaintiff to attempt to get the Court to consider it.  Defendant can

counter any adverse inference that may be drawn from the timing of the termination of the policy with additional information, if it so chooses.

2. *Interrogatories Nos. 5-8*

In these Interrogatories, Plaintiff seeks certain statistical information. Specifically, Plaintiff wants to know how many individuals were receiving long term disability benefits under the Policy when it terminated (Interrogatory No. 5); how many persons were granted benefits post-termination (Interrogatory No. 6); how many persons were receiving benefits on January 1 of each year post-termination up to January 1, 2013 (Interrogatory No. 7); and, how many persons are now receiving benefits (Interrogatory No. 8).

Plaintiff's theory appears to be that answers to these requests may provide the Court with some basis to determine the effect of the conflict on the denial of Plaintiff's claim. Considering that Defendant no longer was receiving premium payments, the theory would be that benefits paid caused a greater conflict to Defendant because it was operating at a loss.

The requests do not target specifically denials of claims. Several courts have opined that information regarding denial of benefits is meaningless without a finding that the denial was wrongful. *See Roberts v. Prudential Ins. Co. of America,* 2013 WL 1431725 *6-7 (S.D.Cal. April 19, 2013); *Dilley v. Metropolitan Life Ins. Co.,* 256 F.R.D. 643, 645 (N.D.Cal. 2009). In these cases, the defendants also expressed a significant burden in collecting the information requested. Defendant has not asserted any particular burden in collecting this information; the only question is relevance.

Because Plaintiffs are not seeking information on claims denied, some of the concerns expressed in *Roberts* and *Dilley* are not present. It is not clear, however, that the requested information provides or will

lead to any information of relevance to the Court in assessing the impact of the conflict. The number of persons receiving benefits at termination versus the number of persons receiving benefits post-termination up to January 1, 2013, may reflect a declining number. That fact, if shown, does not demonstrate an effect on claims administration brought on by the termination of the policy. There are myriad reasons why benefits may terminate. As discussed above, the termination of benefits would have to be wrongful for there to be any value.

The mere fact of paying benefits, post-termination, as mentioned in the discussion of Interrogatory No. 4, sheds no light on the actual financial burden, if any, imposed on Defendant post-termination. For this information to have any value, the Court would have to examine the amount of benefits paid versus the amount of earnings retained or reserved against the policy. That inquiry appears beyond the scope of the review occasioned by this case. Defendant need not answer Interrogatories 5-8. The Court considers it sufficient, for Plaintiff's purposes, to require Defendant to produce the termination date of the applicable policy pursuant to Interrogatory No. 4 and make what she can of that information.

3. *Request for Production No. 6(k)*

Plaintiff seeks production of documents, including claims manuals and the like, reflecting standards, practices and procedures for weighing Social Security disability awards in evaluating long term benefit claims. The basis for this request is the Defendant's reference to the denial of Plaintiff's initial claim for Supplemental Security Income ("SSI") benefits in its initial claims denial letter dated January 3, 2011. Having reviewed the letter, the Court disagrees that Defendant relied on the denial of SSI benefits as a basis to deny Plaintiff's claim. The placement

of the sentence is not within the paragraphs detailing the reasons for denial.  In context, it is informational only.  (*See* ECF No. 38-1, Exh. 1).

Following Defendant's denial of Plaintiff's appeal of the denial of her claim, the Social Security Administration granted benefits to Plaintiff following the appeal of the denial of her claim for SSI.  Plaintiff notified Defendant but Defendant took no action as it had finally denied Plaintiff's claim earlier.   These facts do not provide a reason to obtain Defendant's manuals and other materials regarding its weighing of the grant of Social Security disability benefits on claims processing.  Consequently, Defendant need not respond to this request - the information sought is not relevant in this case.

4. *Request for Production No. 26*

This request substantially mirrors the information sought in Interrogatory Nos. 4-8.  As provided above, Defendant must respond to subpart (a) of the request but need not respond further.

## Conclusion

For the foregoing reasons, Plaintiff's motion to compel further responses, as presented in this joint motion, is **GRANTED IN PART AND DENIED IN PART**.  To the extent that the Court has required further responses, those responses are to served within fourteen (14) days of the filing date of this Order, absent further Order of the Court.

IT IS SO ORDERED.

DATED: November 25, 2013

Hon. Mitchell D. Dembin
U.S. Magistrate Judge